# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

THE FIFE AND DRUM, INC.,

               Plaintiff,             Civil No. 17-3676 (NLH/JS)

       v.                       **OPINION**

DELBELLO ENTERPRISES, LLC
d/b/a IL PORTICO RISTORANTE
ITALIANO,

               Defendant.

---

**APPEARANCES:**

NORMAN ELLIOT LEHRER
SUITE 1000
52 BERLIN ROAD
CHERRY HILL, NJ 08034

    *Attorney for Plaintiff The Fife And Drum, Inc.*

AHMED M. SOLIMAN
SOLIMAN & ASSOCIATES, P.C.
923 HADDONFIELD ROAD
SUITE 300
CHERRY HILL, NJ 08002

    *Attorney for Defendant DelBello Enterprises, LLC d/b/a Il Portico Ristorante Italiano.*

**HILLMAN**, District Judge

    This is a service mark infringement case between two restaurants using the same name: "Il Portico."  The Court conducted a one-day bench trial on May 13, 2019.  For the reasons discussed below, the Court finds that Plaintiff has failed to prove that Defendant infringed on its trademark.  Even

1

if Plaintiff were able to prove its claim of trademark infringement, injunctive relief would be barred by the equitable doctrine of laches. Accordingly, Judgment will be entered for the Defendant.

**BACKGROUND**

The Court takes its facts from the trial record, including those facts stipulated by the parties. Plaintiff, Fife and Drum, Inc., opened a restaurant named "Il Portico Ristorante" in October 1988 in Tappan, New York (the "Tappan Il Portico" or "TIP"). TIP has operated continuously as an Italian fine dining restaurant since 1988. Fife and Drum, Inc.'s owner is Giuseppe Peppe Pinton, who has a separate career as a soccer coach and scout. On June 12, 1990, Plaintiff obtained Federal Service Mark Registration No. 1,601,605 for the mark "IL PORTICO" for restaurant services (the "Mark"). Plaintiff timely filed the appropriate declarations and the parties agree that Plaintiff's registration became incontestable in 2010.[1] Since 1990, Plaintiff has renewed its registration, and for the time period

---

[1] The Lanham Act precludes a defendant from challenging the ownership of a registered trademark after a period of five years if the registered trademark owner complies with certain formalities. These marks are referred to as "incontestable" under the Lanham Act. <u>See TD Bank N.A. v. Hill</u>, 928 F.3d 259, 271 n. 6 (3d Cir. 2019).

at-issue, the Mark was in full force and effect and Plaintiff remains its owner.

In addition to this Mark, Plaintiff registered the domain name "ilportico.com" in May 1998. Plaintiff has continuously operated this domain name since then. Plaintiff also operates two toll free telephone numbers for the restaurant: a national number at 1-888-ILPORTICO and a New Jersey number at 1-800-ILPORTICO. Plaintiff advertises TIP in numerous publications, mostly in New Jersey.[2] A number of publications have featured TIP, including a Zagat survey, which named TIP as one of America's Top 1,000 Italian Restaurants in 2008. Pinton testified that as a restauranteur, he paid attention to dining publications and newspaper reviews.

Tappan, New York is approximately 300 feet from Bergen County, New Jersey. As a result, most of TIP's customers come from New Jersey. Close to the Hudson River, Tappen is north of the George Washington Bridge but south of the Tappen Zee Bridge, both of which span the Hudson. Geographically, Bergen County encompasses the state's northeast corner and is generally northwest of the five boroughs of New York City. Some customers

---

[2] Plaintiff submitted advertisements and reviews for TIP in "The Record," "Dining Out," "Northern Valley Suburbanite," "The Zagat Guide," "Zagat Survey of America's 1,000 Top Italian Restaurants," and "The New York Times" as exhibits.

who previously lived in the area visit TIP when they return. TIP also serves customers visiting from across the country, and even across the world. Pinton also testified that his activities and travels as a coach and scout helped spread the reputation and renown of his restaurant beyond its immediate geographical area, including the southern parts of New Jersey.

Around May 1995, IEJ Corporation ("IEJ"), a Pennsylvania corporation based in Bensalem, Pennsylvania, opened an Italian fine dining restaurant in Philadelphia named "Il Portico" (the "Philadelphia Il Portico" or "PIP").[3] Alberto DelBello a/k/a/ Ilyas Shah, was the principal of IEJ, and the owner and chef of PIP. DelBello is also the principal owner of Defendant, DelBello Enterprises.

PIP operated continuously until mid-2012. Between May 1995 and mid-2012, newspapers and other publications advertised and reviewed PIP.[4] DelBello appeared on local, national, and international television in connection to PIP. During this time, IEJ also maintained a website for PIP at "ilportico.com,"

---

[3] Defendant asserts that PIP was 115 miles from TIP. Plaintiff did not contest this assertion. Therefore, the Court will accept as fact that the distance between PIP and TIP is 115 miles.

[4] Defendant submitted newspaper reviews of PIP from "The Eating Savant," "The Legal Intelligencer," "The Philadelphia Inquirer," "Chestnut Hill Local," and "Philadelphia Daily News."

where customers could make reservations.[5]  Defendant also
maintained a profile on the website "OpenTable" to manage
reservations at PIP.

In 2012, PIP discontinued operations in Philadelphia under
the name "Il Portico" and instead used the name "Tiramisu" at
the same physical location until its permanent closure in 2016.
Therefore, from mid-2012 when PIP closed until the time of this
bench trial, there has not been a Philadelphia restaurant named
"Il Portico."  DelBello testified that his intention was always
to reopen "Il Portico" at a different location closer to his
home in Bensalem, Pennsylvania.  In a similar vein, DelBello
eventually closed Tiramisu in Philadelphia and moved it to the
Philadelphia suburbs closer to his home.

DelBello did open another restaurant named "Il Portico" in
Burlington, New Jersey in 2016 (the "Burlington Il Portico" or
"BIP").[6]  Burlington is in Burlington County which borders on its

---

[5] The parties did not explain how both Plaintiff and Defendant
could maintain the same domain, "ilportico.com," at the same
time.  Currently, "ilportico.com" directs to a website for TIP.

[6] The Parties do not agree on the distance between TIP and BIP.
Pinton testified that BIP is 93 miles from TIP.  The Defendant
claims that BIP, like PIP, is 115 miles from TIP.  There are
many ways to measure this distance - by GPS, crow and Google
maps — but none of them are in the record.  The Court will
resolve this dispute in favor of the non-prevailing party and
will accept Pinton's estimation of 93 miles as it does not
change the Court's analysis or the result.

easternmost edge the Delaware River and extends southwest across the south central part of the state. Burlington, the town, is northeast of Philadelphia and southwest of Trenton, New Jersey. The Burlington-Bristol Bridge spans the Delaware from Burlington to Bristol, Pennsylvania.

BIP and its alleged trademark infringement are the subject of this suit. On August 25, 2016, Defendant registered the domain name "ilporticorestaurant.com." DelBello explained the four-year gap between discontinuing PIP and opening BIP by asserting that it took that long to locate a property, renovate it to his specifications, form several New Jersey corporations, and obtain a liquor license, among other things.

DelBello testified he was advised to create several New Jersey corporations in order to obtain a liquor license for BIP. Other than the different legal entities, DelBello testified that BIP and PIP share the same owner, decorations, furniture, customers, chef, and menus. DelBello testified that he transferred the rights to the name "Il Portico" from PIP to BIP. Plaintiff disagrees, noting that IEJ traded as "Il Portico" but abandoned any rights to the name when it stopped using it in 2012. Plaintiff further notes that Defendant offered no evidence of assignment of rights to the name "Il Portico."

During the time that PIP was in operation, Plaintiff did not sue Defendant for trademark infringement. Giuseppe Peppe Pinton and Fife and Drum, Inc. have successfully asserted Plaintiff's trademark rights against two other restaurants using the name "Il Portico" in Hanover and Carlstadt, New Jersey in 1995 and 1998 respectively.[7] Pinton, the sole witness for Plaintiff, explained that while PIP was in operation, he was unaware of its existence, and therefore had no occasion to assert Plaintiff's trademark rights against PIP. Instead, Pinton testified that he did not learn of PIP's existence until after filing this suit against BIP. Pinton further testified that none of his customers or friends from the southern part of New Jersey mentioned PIP to him.

Since BIP opened in 2016, Pinton testified that TIP had received at least one phone call intended for BIP. Pinton also described an incident in which a driver mistakenly headed toward BIP to attend an event at TIP and had to call TIP for directions. Pinton further described conversations with his

---

[7] Hanover is in Morris County, a northern county west of New York City. Carlstadt is in Bergen County, the New Jersey county closest to TIP. "Courts have traditionally taken judicial notice of facts of universal truth which cannot be reasonably be controverted, such as geography or weather." NTP Marble, Inc. v. AAA Hellenic Marble, Inc. 2012 WL 607975 at *7 n. 10 (E.D. Pa. 2012) (citing In re Int'l Bldg. Components, 161 B.R. 764, 766 (Bankr. W.D. Pa. 1993) (taking judicial notice that a city was located in a particular county)).

customers who commented on Pinton opening another restaurant in New Jersey.  Pinton believes that the confusion between TIP and BIP is due to increased use of the Internet and mobile navigation software.

Pinton testified that he did not begin to use the Internet to search for possibly infringing restaurants until 2014 or 2015.  The Parties agree, and Pinton testified to the fact that there are no other restaurants in the United States or New Jersey using the name "Il Portico" besides TIP and BIP.

On May 23, 2017, Plaintiff filed its complaint with five claims: (1) trademark infringement; (2) trademark counterfeiting; (3) false designation of origin; (4) New Jersey statutory trademark counterfeiting; and (5) common law trademark infringement.  Plaintiff's complaint requested an injunction barring Defendant's use of the Mark, actual and statutory damages, and attorneys' fees, costs, and interest.  On August 16, 2017, Plaintiff filed its first amended complaint (the "FAC").  The claims remained the same in the FAC.  Plaintiff now seeks only injunctive relief and has waived claims for actual and statutory damages, attorneys' fees, costs, and interest.[8]

---

[8] Although Plaintiff raised five separate claims in both the complaint and the FAC, the only claim submitted to the Court for resolution at trial was Plaintiff's first claim for trademark

The parties did not engage in any dispositive motion practice relevant to this Opinion.  Instead, the Court scheduled a bench trial for February 25, 2019.  The parties prepared pretrial documents and motions in limine.  The Court decided the parties' motions in limine in a February 19, 2019 Order and excluded certain exhibits.  The Court rescheduled the bench trial for May 13, 2019.

A bench trial was conducted on May 13, 2019.  In addition to receiving various exhibits, the Court heard testimony from Pinton, DelBello, and Denise Norkus.  Norkus is DelBello's wife, business partner, and former manager of PIP.  The parties submitted proposed findings of fact and conclusions of law on July 18, 2019.  On August 8, 2019, Plaintiff submitted responsive proposed findings of fact and conclusions of law. Therefore, the matter is ripe for final adjudication.

## Analysis

### A. Subject Matter Jurisdiction

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338.

---

infringement.  As the other four counts were not tried, they are not addressed in this opinion and are de facto abandoned.

**B. Bench Trial Opinion Standard**

This Opinion constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Rule 52(a)(1). <u>Pierre v. Hess Oil Virgin Islands Corp.</u>, 624 F.2d 445, 450 (3d Cir. 1980) (holding that to be in compliance with Rule 52(a), findings of fact and conclusions of law do not need to be stated separately in a court's memorandum opinion); <u>see also Ciolino v. Ameriquest Transp. Services, Inc.</u>, 751 F. Supp. 2d 776, 778 (D.N.J. 2010) (issuing an opinion which constituted the courts findings of fact and conclusions of law).

**C. Bench Trial Opinion**

Plaintiff's sole claim in this action is that Defendant infringed on its service mark, "IL PORTICO," for use in restaurant services. Defendant disagrees, arguing that Plaintiff has not shown any likelihood of confusion, a required element of Plaintiff's claim. In the alternative, Defendant argues that Plaintiff is barred from asserting this claim by the equitable doctrine of laches.

The relevant statute, 15 U.S.C. § 1127, states:

The term "service mark" means any word, name, symbol, or device, or any combination thereof—

    (1) used by a person, or

10

> (2) which a person has a bona fide intention to use
> in commerce and applies to register on the
> principal register established by this Act,
>
> to identify and distinguish the services of one person,
> including a unique service, from the services of others
> and to indicate the source of the services, even if that
> source is unknown. Titles, character names, and other
> distinctive features of radio or television programs may
> be registered as service marks notwithstanding that
> they, or the programs, may advertise the goods of the
> sponsor.

For registrability and protection purposes, trademarks and service marks are treated identically. <u>See</u> 15 U.S.C. § 1053 ("Subject to the provisions relating to the registration of trademarks, so far as they are applicable, service marks shall be registrable, in the same manner and with the same effect as are trademarks, and when registered they shall be entitled to the protection provided herein in the case of trademarks. Applications and procedure under this section shall conform as nearly as practicable to those prescribed for the registration of trademarks."); <u>Park n'Fly v. Dollar Park & Fly</u>, 469 U.S. 189, 192 n. 1 (1985) ("The Trademark Act of 1946 (Lanham Act), 60 Stat. 427, as amended, 15 U.S.C. § 1051 *et seq.*, generally applies the same principles concerning registration and protection to both trade and service marks.") (citing 15 U.S.C. § 1053). Therefore, in determining the merits of Plaintiff's Lanham Act claim for service mark infringement, the Court may

rely on law regarding either trademark or service mark
infringement.

## 1. Trademark Infringement

To prove infringement, a plaintiff must "demonstrate that
(1) it has a valid and legally protectable mark; (2) it owns the
mark; and (3) the defendant's use of the mark to identify goods
or services causes a likelihood of confusion." A&H Sportswear,
Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d
Cir. 2000) (citing Commerce Nat'l Ins. Servs., Inc. v. Commerce
Ins. Agency, Inc., 214 F.3d 432, 437 (3d Cir. 2000)). "If a
mark is both federally registered and 'incontestible,' see 15
U.S.C. §§ 1058, 1065, the mark is presumed to meet the first two
requirements." Express Servs. v. Careers Express Staffing
Servs., 176 F.3d 183, 185 (3d Cir. 1999). The parties do not
dispute the Plaintiff has established the first two elements.
The only disputed issue is whether Plaintiff has demonstrated a
likelihood of confusion by a preponderance of the evidence.

A likelihood of confusion exists when "the consumers
viewing the mark would probably assume that the product or
service it represents is associated with the source of a
different product or service identified by a similar mark." Ford
Motor Co. v. Summit Motor Products Inc., 930 F.2d 277, 292 (3d

Cir. 1991) (quoting <u>Scott Paper Co. v. Scott's Liquid Gold Inc.</u>, 589 F.2d 1225, 1229 (3d Cir. 1978)).

In <u>A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.</u>, the Third Circuit held that "whether or not the goods directly compete, the <u>Lapp</u> factors should be employed to test for likelihood of confusion." 237 F.3d 198, 215 (3d Cir. 2000) (citing <u>Interpace Corp. v. Lapp, Inc.</u>, 721 F.2d 460, 463 (3d Cir. 1983)). To determine the likelihood of confusion, the Court will consider the following ten factors:

(1)  The degree of similarity between the owner's mark and the alleged infringing mark;

(2)  The strength of the owner's mark;

(3)  The price of the goods and the other factors indicative of the care and attention expected of consumers when making a purchase;

(4)  The length of time the defendant has used the mark without evidence of actual confusion arising;

(5)  The intent of the defendant in adopting the mark;

(6)  The evidence of actual confusion;

(7)  Whether the goods, competing or non-competing are marketed through the same channels of trade and advertised through the same media;

(8)  The extent to which the largest of the parties' sales efforts are the same;

(9)  The relationship of the goods in the minds of consumers, whether because of the near-identify of the products, the similarity of function, or other factors;

(10) Other factors suggesting that the consuming public might expect the prior owner to manufacture both

products, or expect the prior owner to manufacture the product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.

This assessment is a qualitative inquiry and not all factors will be relevant or afforded the same weight depending on the factual setting. A & H Sportswear, Inc., 237 F.3d at 215. No one factor is determinative. See Sabinsa Corp. v. Creative Compounds, LLC, 609 F.3d 175, 182 (3d Cir. 2010).

The factors relevant to this case are discussed below:

(a) **Degree of Similarity (Lapp Factor 1)**

Though not dispositive, the "degree of similarity of the marks may be the most important of the ten factors in Lapp." Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466, 476 (3d Cir. 1994).

Plaintiff holds a Federal Service Mark for the mark "IL PORTICO" for restaurant services. Defendant operates a restaurant named "Il Portico Restaurant." These marks are identical.

Because TIP and BIP bear identical names and this factor is an important one, this factor weighs heavily in favor of a finding of likelihood of confusion.

### (b) **Strength of the Owner's Mark (Lapp Factor 2)**

The strength of a mark is determined by its (1) conceptual strength and (2) commercial strength.  Sabinsa Corp., 609 F.3d at 184-85.

The parties did not address this factor.  Judging by the photographs in the record, the Mark appears to be descriptive of the building where TIP is located, and except for the use of romance language is otherwise fanciful and not descriptive of the services offered (fine Italian dining).  It is a relatively strong mark conceptually and Pinton's testimony established the Mark has achieved commercial strength at least in the New York City and northern New Jersey areas.  In the Court's view, this factor favors a finding of infringement.

### (c) **Sophistication of Consumers (Lapp Factor 3)**

"More sophisticated consumers are more likely to take great care when buying a product, rendering confusion less likely."  Vynamic, LLC v. Diebold Nixdork, Inc., 2019 WL 193660 at *7 (E.D. Pa. 2019) (citing Steak Umm Co., LLC v. Steam 'Em Up Inc., 2011 WL 3679155 at *5 (E.D. Pa. 2011)).

The parties did not address this factor.  Both sides have spent considerable efforts to promote the careers of their respective chef/proprietors, testifying or implying that diners patronize their respective restaurants because of their individual renown and culinary reputations and the distinctive

15

cuisine offered by each.  This suggests that with regard to both
Plaintiff and Defendant, sophisticated consumers make informed
and deliberate choices about where, and with whom, they spend
their business lunch and date-night dollars.  In the Court's
view, this factor weighs strongly against a finding of
likelihood of confusion.

> (d)  **Length of Time Without Actual Confusion (Lapp
>       Factor 4)**[9]

"If a defendant's product has been sold for an appreciable
period of time without evidence of actual confusion, one can
infer that continued marketing will not lead to consumer
confusion in the future.  The longer the challenged product has
been in use, the stronger this inference will be."  Versa
Products Co., Inc. v. Bifold Co. (Mfg.) Ltd., 50 F.3d 189, 205
(3d Cir. 1995).

Defendant operated PIP from 1995 to 2012 without any
evidence of actual confusion with TIP.  Plaintiff introduced two
specific instances of confusion between BIP and TIP since 2016.
Plaintiff also spoke more generally about customers' comments
congratulating him on opening a new location in New Jersey.

---

[9] It strikes the Court as somewhat odd that a sequential
application of the Lapp factors calls upon the Court to consider
the length of time without actual confusion (Lapp Factor 4)
before the Court considers whether any actual confusion exists
at all (Lapp Factor 6).  In any event, the Court will consider
the factors in the order set out in Lapp.

16

Because PIP operated for around 17 years without any confusion, and the evidence of confusion from the operation of BIP since 2016 is anecdotal, thin, and less than convincing.[10] Consistent with the findings set forth below,[11] this factor weighs against a finding of likelihood of confusion.

        (e) **Defendant's Intent in Adopting the Mark (Lapp Factor 5)**

The intent factor asks whether the defendant intended to confuse consumers by adopting a mark resembling the plaintiff's mark. See A&H Sportswear, 237 F.3d at 225-26. The plaintiff must demonstrate that the defendant acted with an intent to confuse, not merely an intent to copy when it adopted the mark. Id.

The parties did not address Defendant's intent when adopting the mark "Il Portico" for PIP in 1995. Defendant stated that he did not intend to discontinue using the name "Il

---

[10] The Court allowed Pinton to testify, over a hearsay objection, to his personal perceptions of customer confusion. Pinton was the only witness offered by the Plaintiff and no TIP customer testified to actual confusion. As Plaintiff correctly points out, no proof of actual confusion is required. The test is likelihood of confusion. But Plaintiff seemingly wants it both ways. On the one hand, it wants the Court to credit Pinton's recitation of out-of-court statements that customer were actually confused and, on the other hand, disavows any obligation to offer such proof. Under these circumstances, the Court will discount somewhat the weight of Plaintiff's self-serving testimony regarding isolated incidents of customer confusion.

[11] See infra pp. 18-19.

Portico" between the closure of PIP in 2012 and opening of BIP in 2016 and there is no real evidence to the contrary. While Plaintiff sought to suggest that the long delay in opening BIP proved abandonment and some form of mal intent in resurrecting the name in the Burlington location, Defendant's explanation rings true. The search for a suitable place, legal entanglements and local regulations, and attendance to other matters delayed the opening. Throughout this lengthy relocation process, Defendant testified he kept all of the original furnishings and accoutrements of PIP in storage, down to the paintings and menus, corroboration of his stated intent to simply reopen the original restaurant in a new location close to his home in the Philadelphia suburbs.

In the absence of evidence that Defendant intended to confuse when he adopted the mark "Il Portico," this factor weighs against an intent to infringe and therefore against a finding of likelihood of confusion.

(f) **Evidence of Actual Confusion (Lapp Factor 6)**

Though proof of actual confusion is not required for a successful trade dress infringement action, evidence of actual confusion is highly probative of the likelihood of confusion. See Checkpoint Sys., Inc. v. Check Point Software Technologies, 269 F.3d 270, 291 (3d Cir. 2001) (citing Versa Products Co., Inc., 50 F.3d at 205).

However, "a district court may weigh the sixth Lapp factor in favor of a defendant when it concludes that the evidence of actual confusion was isolated and idiosyncratic." McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC, 511 F.3d 350, 366 (3d Cir. 2007) (citing Checkpoint Sys., Inc., 269 F.3d at 298) (finding that testimony from a single non-representative consumer was insufficient to establish actual confusion). "As to those few customers who do not care about brands and do not pay attention to them, such 'brand indifferent' customers do not count in the equation of likelihood of confusion." Id. (citing 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:5 (4th ed. 2006)).

Plaintiff offered two second-hand descriptions of customers mistaking BIP for TIP or vice versa. Plaintiff also gave a second-hand account of comments by his customers about opening another location in New Jersey. Plaintiff did not provide any testimony regarding actual confusion between PIP and TIP.

Because Plaintiff's evidence of actual confusion is all second-hand testimony, it is difficult to assess whether the customers described are representative customers, or "brand indifferent" customers. Because Plaintiff's evidence of actual confusion is isolated and idiosyncratic, this factor weighs against a finding of likelihood of confusion.

(g) **Advertisement through the Same Channels of Trade and Media and Overlap of Sales Efforts (Lapp Factor 7)**

The greater the similarity in advertising and marketing, the greater the likelihood of confusion.  See Checkpoint Sys. Inc., 269 F.3d at 288-90.  This fact-intensive inquiry requires that courts examine trade exhibitions, publications, and other media the parties to use to market and sell their products.  Id. at 289.

The parties did not directly address this factor. Plaintiff testified that he advertises TIP in publications mainly in New York and northern New Jersey such as the New York Times.  Defendant submitted newspaper reviews and advertisements for PIP in Philadelphia-based publications, but did not submit any such exhibits for BIP.  The selected advertisements and reviews submitted by the parties show no overlap in channels of trade and media and appear to target two distinct geographical markets, Plaintiff focusing on the New York and northern New Jersey market and Defendant focusing its efforts historically in the Philadelphia region.

While the parties did not directly address the channels of advertisement for TIP, PIP, or BIP, on the record before this Court this factor weighs against a finding of likelihood of confusion.

### (h)  Overlap of Sales Efforts (Lapp Factor 8)

If the parties' sales efforts target the same consumers, there is a stronger likelihood of confusion.  See Checkpoint Sys. Inc., 269 F.3d at 289-90.

As discussed above, the parties submitted selected advertisements and reviews as exhibits.  The parties did not further address their sales efforts.  For the same reasons this factor weighs against a finding of likelihood of confusion under Lapp factor 7 it is given the same weight under this factor.

### (i)  Relationship of the Goods in the Minds of Consumers (Lapp Factor 9)

For this factor, the question is whether the goods or services are "similar enough that a consumer could assume they were offered by the same source."  Kos Pharms, Inc. v. Andrx Corp., 369 F.3d 700, 723 (3d Cir. 2004) (quoting Fisons Horticulture, Inc., 30 F.3d at 481).  This factor is "intensely factual" and allows courts to consider "whether buyers and users of each parties' goods are likely to encounter the goods of the other, creating an assumption of common source[,] affiliation or sponsorship."  Checkpoint Sys., Inc., 269 F.3d at 286-88.  "Goods may fall under the same general product category, but operate in distinct niches.  When two products are part of distinct sectors of a broad product category, they can be

sufficiently unrelated that consumers are not likely to assume the products originate from the same mark." Id. at 288.

In this case, TIP and BIP are both Italian fine dining restaurants, suggesting that they may be similar enough that a customer could assume they were offered by the same source. However, it is unlikely that buyers and users of TIP and BIP will encounter the other's goods.  Plaintiff acknowledged that both that Tappan and Burlington may be "separate trading areas" and that customers do not typically drive from Burlington to Tappan for dinner or vice versa.  Defendant similarly testified that most of BIP's customers are local.  Because customers are unlikely to travel between the two restaurants, BIP and TIP operate in separate niches.

Though the parties appear to offer very similar products, TIP and BIP operate in distinct niches that are unlikely to be related in a customer's mind.  This factor weighs against a finding of likelihood of confusion.

### (j)  **Other Factors (Lapp Factor 10)**

The parties did not identify or discuss any other factors that suggest that the consuming public might expect the prior owner, here Plaintiff, would likely expand into the Defendant's market.  While Defendant did move his restaurants, both Tiramasu and Il Portico, north and west of Center City Philadelphia the moves were not far and not part of an expansion of operations.

Plaintiff, for its part is a single location and always has been.  As noted above under Lapp Factor 3 both restaurants, while operating under corporate names, are essentially sole proprietorships tied to their reputations as chefs and the personal attention they pay to customers.  These are not likely to become franchise operations.  This factor weighs neither in favor nor against a finding of likelihood of confusion.

In sum, Lapp factors 1 and 2 weigh in favor of finding a likelihood of confusion.  Factors 3, 4, 5, 6, 7, 8, and 9 weigh against a finding of likelihood of confusion.  Factor 10 is neutral.  On the record as a whole and after consideration of all relevant Lapp factors, the Court concludes that Plaintiff has failed to meet its burden of establishing a likelihood of confusion between TIP and BIP.  Therefore, Plaintiff's trademark infringement claim fails.

## 2. Laches

Defendant argues that even if it has infringed on Plaintiff's mark, laches bars injunctive relief.  There are two classes of cases involving laches: (1) cases where the "plaintiff's delay has been so unreasonable, outrageous, and inexcusable that it can be said that the mark has been virtually abandoned, the remedy under the general rule, barring of all relief, will be granted" and (2) cases where "less flagrant delay will serve to bar a plaintiff's claim for an accounting

for past infringement but not for prospective injunctive relief." Three Degrees Enterprises, Inc. v. Three Degrees Worldwide, Inc., 1989 WL 119697 (E.D. Pa. 1989) (citing Univ. of Pittsburgh v. Champion Prods., 686 F.2d 1040, 1044 (3d Cir. 2013)). Because Plaintiff only seeks injunctive relief and has waived all claims for costs, attorneys' fees, or profits, only the standard for the first class of cases will be discussed below.

In order to raise laches as an affirmative defense, a party must prove two essential elements: "(1) inexcusable delay in instituting suit, and (2) prejudice resulting to the defendant from such a delay." Id.

**(a) Plaintiff's Delay in Instituting Suit**

"'[I]nexcusable delay' is measured by reference to 'the most analogous' state statute of limitations, which, in the case of trademark infringement, is New Jersey's six-year fraud statute." New Reflections Plastic Surgery, LLC v. Reflections Ctr. for Skin and Body, PC, 2018 WL 6716105 (D.N.J. 2018) (citing D'Agostino v. Appliances Buy Phone, Inc., 633 Fed. Appx. 88, 91 n. 3 (3d Cir. 2015)). The statute of limitations begins to run when "the right to institute and maintain the suit arises." Beauty Time, Inc. v. VU Skin Sys., 118 F.3d 140, 144 (3d Cir. 1997) (citations and quotations omitted).

Therefore, "aggrieved parties must . . . bring their claim within [the applicable statute of limitations] when they learned or should have learned, through the exercise of due diligence, that they have a cause of action." Id. at 148. Plaintiffs are "expected to exercise reasonable diligence in attempting to ascertain the cause of any injury." Id. Reasonable diligence has been defined by the Third Circuit as "[a] fair, proper and due degree of care and acting, measured with reference to the particular circumstances; such as diligence, care, or attention as might be expected from a man of ordinary prudence and activity." Id. (citing Black's Law Dictionary 457 (6th ed. 1991)). The Third Circuit further found that "there are few facts which diligence cannot discover, but there must be some reason to awaken inquiry and suggest investigation." Id. (citing Urland By and Through Urland v. Merrell-Dow Pharms., 822 F.2d 1268, 1273-74 (3d Cir. 1987)).

Where a plaintiff "'sleeps on his rights for a period of time greater than the applicable statute of limitations,' the burden of proof shifts to the plaintiff to prove the absence of such prejudice to the defendant as would bar all relief." Champion Prods., 686 F.2d at 1045 (citing Gruca v. United States Steel Corp., 495 F.2d 1252, 1258-59 (3d Cir. 1974) and Burke v. Gateway Clipper, Inc., 441 F.2d 946, 949 (3d Cir. 1971)).

Plaintiff had a right to institute and maintain a suit some time in 1995 when PIP opened in Philadelphia using the name "Il Portico."  Therefore, any suit initiated after 2002 would be an inexcusable delay.  The current suit was initiated in January 2017.[12]

In this instance, Plaintiff did not exercise reasonable diligence in attempting to ascertain any instances of trademark infringement.  Despite maintaining a website for TIP since 1998, Plaintiff did not begin using the Internet to search for potential trademark infringement for another 16 to 18 years. Plaintiff either missed or disregarded several reasons to "awaken inquiry and suggest investigation" into a suit against PIP within the statute of limitations: Defendant maintained a digital presence for PIP both on OpenTable and at ilportico.com; Defendant promoted PIP on local, national, and international television; dining publications and newspapers reviewed and advertised PIP.  Tellingly, by 1998, three years after PIP had opened in Philadelphia, Plaintiff had already identified and

---

[12] The Court recognizes that it would have been difficult, if not impossible, for Plaintiff to anticipate the reincarnation of PIP as BIP during the 2012-2016 period of dormancy when Defendant did not use the mark openly and actively in conjunction with restaurant services.  But this does not excuse Plaintiff's lack of action from 1995 to 2012, a 17-year span far longer than the statute of limitations and over a course of time when the internet and GPS navigation became ubiquitous.

successfully sued two other competing restaurants in New Jersey using the same Mark.

The fact that none of TIP's customers mentioned PIP to Plaintiff does not excuse Plaintiff's delay or indicate that Plaintiff acted with reasonable ordinary prudence. Having shown inexcusable delay, the burden then shifts to Plaintiff to prove the absence of prejudice to Defendant.

**(b) Prejudice to the Defendant**

The distinction between cases of mere delay and cases which allow for the affirmative defense of laches lies in the defendant's detrimental reliance. See Champion Prods., 686 F.2d at 1045 (citing Menendez v. Holt, 128 U.S. 514, 52324 (1888)). Laches becomes relevant where a senior trademark user "delays in asserting its rights for so long that the junior user has developed sufficient demand and goodwill through its own efforts that it would be inequitable to enforce the senior's rights." Champion Prods., 686 F.2d at 1047. "So long as the junior user adopted the mark in 'good faith,' a senior user 'may not be able to obtain relief against the junior user in an area where [the senior user] has no established trade, and hence no reputation and no good will.'" SMJ & J, Inc. v. NRG Heat & Power, LLC, 912 F.Supp.2d 189, 20203 (M.D. Pa. 2012) (internal citations

omitted) (citing Natural Footwear Ltd. v. Hart, Schaffner & Marx, 760F.2d 1383, 1394 (3d Cir.1985)).

Defendant has detrimentally relied on Plaintiff's delay in bringing a trademark infringement suit for use of the mark "Il Portico."  After operating PIP successfully from 1995 to 2012, Defendant purchased and renovated a new location for his restaurant in Burlington, New Jersey.  Defendant purchased a new domain name for BIP in August 2016.

Furthermore, Defendant has expended significant effort in building and maintaining demand and goodwill for his restaurants, PIP and BIP.  Defendant's efforts include doing TV appearances to promote PIP; advertising in various publications; purchasing and maintaining a domain name for both PIP and BIP; purchasing and renovating property in Burlington; creating several New Jersey corporations to obtain a liquor license; and operating his restaurants as head chef and owner.  Defendant testified that his customers from BIP and PIP have goodwill for the name "Il Portico" and have come to associate the name with his reputation as a chef.  Defendant further testified that former customers of PIP have also visited BIP.  During Plaintiff's delay in asserting its rights, DelBello, PIP, and BIP have developed a sufficient demand and goodwill through their own efforts.

As discussed above, Plaintiff has not provided any facts
related to Defendant's intent when using the mark "Il Portico"
that would suggest Defendant did not act in good faith.  Looking
at the facts in the record, Plaintiff has no established trade
in Burlington, New Jersey, and hence no reputation or goodwill
in this area.  To conclude, Plaintiff's delay has caused
prejudice to Defendant.

Based on the foregoing analysis, Defendant has established
that Plaintiff is barred from the only relief it seeks here -
injunctive relief - by the equitable doctrine of laches.

**(c)  Progressive Encroachment**

Plaintiff argues that under the doctrine of progressive
encroachment, it was not obligated to bring a suit until BIP
opened in 2016.  Accordingly, Plaintiff asserts that laches
should not bar injunctive relief.

The Third Circuit has not directly adopted the doctrine of
progressive encroachment.  Urban Outfitters, Inc. v. BCBG Max
Azria Grp., Inc., 511 F.Supp.2d 482, 509 (E.D. Pa. 2007).  It
has, however, recognized the reasoning behind the doctrine.  Id.
The Third Circuit has held that laches does not bar an
injunction where the defendant changed from modest local sales
to a program of national sales.  See Champion Prods., 686 F.2d
at 1046.  "Changes in the quality and quantity of the alleged

infringing use can excuse delay in suing, for purposes of laches defense asserted by alleged infringer." Guardian Life Ins. Co. of America v. American Guardian Life Assur. Co., 943 F. Supp. 509, 520 (E.D. Pa. 1996), abrogated on other grounds by A&H Sportswear Inc., 237 F.3d at 220-21. "[I]t is only when 'the accused use moves closer or increases in quantity that the doctrine of progressive encroachment requires the trademark to remain alert and to promptly challenge the new and significant acts of infringement.'" Urban Outfitters Inc., 511 F.Supp.2d at 509 (citing 4 McCarthy on Trademarks and Unfair Competition § 31:20 (4th ed 2006)).

The First Circuit has adopted an element based test for progressive encroachment which requires proof that "(1) during the period of the delay the plaintiff could reasonably conclude that it should not bring suit to challenge the allegedly infringing activity; (2) the defendant materially altered its infringing activities; and (3) suit was not reasonably delayed after the alteration in infringing activity." Oriental Financial Grp., Inc. v. Cooperativa de Ahorro y Credito Oriental, 698 F.3d 9, 21 (1st Cir. 2012). The Sixth Circuit uses a similar analysis for progressive encroachment. See Kellogg Co. v. Exxon Corp., 209 F.3d 562, 568-75 (6th Cir. 2000). Under either the Third Circuit approach or the First

Circuit test, Defendant is not barred from asserting the laches defense under the facts of this case.

Applying the Third Circuit articulation of the doctrine first, Plaintiff did not show that Defendant has changed from modest local sales at PIP to national sales at BIP. Nor did Plaintiff introduce any evidence to suggest that Defendant's quantity or quality of use had changed between operating PIP and BIP. Defendant testified that BIP has the same decorations, furniture, and menus, suggesting that the quantity and quality of use of the mark "Il Portico" has remained the same since PIP opened in 1995. Accepting Plaintiff's assertion that BIP is 93 miles away from TIP and accepting Defendant's assertion that TIP was 115 miles away from PIP, Defendant has moved 22 miles closer to Plaintiff's restaurant.

Application of the First Circuit test results in the same outcome. The second requirement for progressive encroachment in the First Circuit test echoes the Third Circuit gloss on the doctrine and addresses "the likelihood of confusion resulting from the defendant's moving into the *same or similar market area* and placing itself more squarely in competition with the plaintiff." Oriental Financial Grp., 698 F.3d at 22 (citing Kellogg Co., 209 F.3d 571 (emphasis in original)). The second requirement examines whether the defendant "after beginning its

use of the mark, *redirected its business* so that it more squarely competed with the plaintiff and thereby increased the likelihood of public confusion of the marks." Id. (emphasis in original)(citing ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic and Sports Physical Therapy P.C., 314 F.3d 62, 70 (2d Cir. 2002); see also Tillamook Country Smoker, Inc. v. Tilamook County Creamery Ass'n, 465 F.3d 1102 (9th Cir. 2006) ("To establish progressive encroachment, [Plaintiff] would have had to show that [Defendant] expanded its business into *different* regions or into *different* markets." (internal quotations omitted) (emphasis in original)).

During the trial, Plaintiff conceded that "there is no question that there are perhaps separate trading areas," but instead argued that Plaintiff's reputation expanded beyond its trading area. Plaintiff had the burden of showing that Defendant expanded its business into different regions or different markets. Plaintiff did not argue that after beginning its use of the mark "Il Portico" in 1995, that Defendant redirected its business so that it more squarely competed with Plaintiff. Plaintiff has not made a showing that by moving to Burlington from Philadelphia, Defendant moved to a different region or market. The geography suggests otherwise.

Plaintiff has also failed to meet the first element of the First Circuit test. First, Plaintiff offered no evidence to support a finding that Plaintiff could have reasonably concluded that it should not bring a suit to challenge the allegedly infringing activity during the period of delay. As noted above, during the period of delay, between 1995 when PIP opened and 2017 when Plaintiff brought this suit, Plaintiff succeeded in asserting its trademark rights against two other "Il Portico" restaurants. Plaintiff did not offer an explanation for why it did not pursue PIP for trademark infringement other than it was not aware of PIP's existence until 2017.

Based on its failure to meet the Third Circuit standard and two of the three First Circuit elements,[13] a test this Court adopts as persuasive authority, Plaintiff has not established that progressive encroachment excuses its delay in bringing a suit against Defendant for trademark infringement.

## Conclusion

For the reasons discussed above, the Court denies Plaintiff's request for injunctive relief. Plaintiff did not

---

[13] It appears that Plaintiff could meet the third element. While the Court finds that Defendant's alteration in use of the Mark was not material, Plaintiff did not unreasonably delay suit after BIP opened sometime in 2016. Plaintiff filed this suit in May 2017 after contacting BIP in October 2016 about the alleged infringement of Plaintiff's mark.

prove that Defendant infringed on its trademark.  Even if

Plaintiff was able to prove its claim of trademark infringement,

injunctive relief would be barred by laches.

An accompanying Order will be entered directing Judgment in

Defendant's favor and dismissing the action in full.

Dated: November 1, 2019

                                   s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.